



RECEIVED CVK
11/14/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JUSTIN MAHWIKIZI, individually, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BAIRD & WARNER, INC., an Illinois corporation, and | ) | |
| MAINSTREET ORGANIZATION OF REALTORS ®, | ) | |
| an Illinois not-for-profit corporation, d/b/a Succeed With | ) | |
| More, | ) | |
| | ) | |
| Defendants. | ) | |

1:25-cv-14038
Judge April M. Perry
Magistrate Judge Albert Berry, III

Case No.: RANDOM/Cat. 1 _____

**COMPLAINT**
**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

UNITED STATES DISTRICT COURT ................................................................................................... 1

I.     INTRODUCTION .......................................................................................................... 3

II.    II. JURISDICTION AND VENUE ....................................................................................... 5

III.    THE PARTIES............................................................................................................... 5

     A.    PLAINTIFF ............................................................................................................. 5

     B.    DEFENDANTS.......................................................................................................... 6

IV.    FACTUAL ALLEGATIONS .............................................................................................. 7

     A.    MARKET DEFINITION AND MARKET POWER: ................................................................ 7

     B.    ESSENTIAL FACILITY AND FORECLOSURE:......................................................................... 8

     C.    ANTICOMPETITIVE EFFECTS AND CONSUMER HARM: ....................................................... 8

     D.    HUB-AND-SPOKE CONSPIRACY: .................................................................................. 9

     E.    PLAINTIFF'S INJURY, CAUSATION, AND PLUS FACTORS: ..................................................... 9

V.     EVIDENTIARY EXAMPLES .......................................................................................... 10

VI.    CAUSES OF ACTION .................................................................................................. 10

A.    COUNT I – VIOLATION OF SHERMAN ACT §1 (15 U.S.C. §1).......................................... 10

B.    COUNT II – VIOLATION OF CLAYTON ACT §3 (15 U.S.C. §14) ...................................... 10

C.    COUNT III – VIOLATION OF ILLINOIS ANTITRUST ACT (740 ILCS 10/1 ET SEQ.)................. 11

D.    COUNT IV – UNJUST ENRICHMENT (ILLINOIS COMMON LAW).................................... 11

E.    COUNT V – DECLARATORY JUDGMENT (28 U.S.C. §2201) ........................................ 11

VII.    PRAYER FOR RELIEF .................................................................................................. 12

VIII.    DEMAND FOR JURY TRIAL......................................................................................... 12

## COMPLAINT

Plaintiff JUSTIN MAHWIKIZI ("Plaintiff"), individually, asserts the following against Defendants Baird & Warner, and Mainstreet Organization of Realtors®(Mainstreet); based upon personal knowledge, where applicable, information and belief. This action challenges an unlawful tying arrangement and concerted scheme between a dominant real-estate brokerage and a regional trade association that conditions access to an essential facility—the Multiple Listing Service ("MLS")—on the purchase of private association membership. MLS access is indispensable for participating in modern real-estate markets, and Defendants have leveraged that indispensability to impose supracompetitive fees and erect exclusionary barriers to entry. Through coordinated policies, uniform onboarding practices, and mutual financial benefit, Defendants have jointly enforced a pay-to-play structure that coerces new licensees into purchasing association membership they would not otherwise buy. These actions restrain trade, reduce competition, and harm both real-estate professionals and the consumers they serve. Plaintiff brings this suit to remedy the anticompetitive conduct, recover statutory damages, and restore open, nondiscriminatory access to essential real-estate market infrastructure. Judicial intervention is necessary to dismantle this unlawful tying arrangement and protect competition in the Illinois real-estate marketplace.

## I.    INTRODUCTION

1.    This action arises from a combination and conspiracy among Baird & Warner, Inc. ("Baird & Warner") and the Mainstreet Organization of Realtors® ("Mainstreet") to restrain trade and suppress competition in the residential real estate brokerage market in Northern Illinois.

3

2.      Plaintiff brings this case to enjoin the Defendants' unlawful coordination and recover damages for injuries sustained through exclusionary and retaliatory practices designed to prevent competitive entry and price competition.

3.      This case challenges an unlawful anticompetitive scheme orchestrated and enforced by Defendants to condition access to the Multiple Listing Service (MLS)—an essential facility for real estate agents—upon mandatory membership in private trade associations.

4.      Plaintiff was personally coerced into paying $1,000 in membership dues to the Mainstreet Organization of Realtors® ("Mainstreet"), under pressure from his sponsoring brokerage, Defendant Baird & Warner, Inc. ("Baird & Warner"), which explicitly admitted it received a portion of those payments.

5.      The scheme reflects the adoption and enforcement of REALTOR® rules that mandate tying MLS access to association membership. Although such rules are promulgated nationally, Plaintiff's claims here arise from their implementation and enforcement in Illinois by Mainstreet and Baird & Warner.

6.      Brokers use Multiple Listing Services ("MLSs") to share information about homes for sale. An MLS is a database of and the marketplace for properties listed for sale in a particular geographic region. The vast majority of homes in the United States are sold on an MLS. The home seller's broker (the "seller-broker") lists her client's home on the MLS, and the home buyer's broker (the "buyer agent") uses the MLS to locate homes for her clients. In order to effectively market properties to buyers, seller-brokers must list their clients' properties on an MLS.

7.      Defendants' agreements and coordination that include monetary kickback from

Mainstreet to Baird & Warner individually and collectively unreasonably restrain trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 & 26. Plaintiff, sues Defendants for violations of the federal antitrust laws as alleged herein, and seeks treble damages, declaratory judgement, and injunctive relief.

## II.    II. JURISDICTION AND VENUE

8.     This Court has subject matter, and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and under the Sherman Act, 15 U.S.C. §§ 1–7, and the Clayton Act, 15 U.S.C. §14. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendants reside in, transact business in, and the events giving rise to these claims occurred within this District.  The acts alleged herein were within the flow of, and substantially affected, interstate commerce, including interstate real-estate listings, advertising, and electronic MLS data transmissions.

9.     This Court has personal jurisdiction over Defendants. Defendants have: (1) transacted business in the United States, including in this District; (2) had substantial contacts with the United States, including in this District.

## III.    THE PARTIES

### A.    Plaintiff

10.    Plaintiff Justin Mahwikizi is a licensed Illinois real estate broker residing in Cook County, Illinois. At all times relevant, Plaintiff was affiliated with Baird & Warner as his sponsoring brokerage.

**B.**     **Defendants**

11.     Defendant Baird & Warner, Inc. is an Illinois corporation headquartered in Chicago, Illinois, and is one of the state's largest brokerages. It employs and sponsors thousands of real estate agents, and conditions affiliation on compliance with Mainstreet membership requirements that are not mandated by Illinois law.

12.     Defendant Mainstreet Organization of Realtors®, doing business as Succeed With More, is an Illinois not-for-profit corporation headquartered in Downers Grove, Illinois. Mainstreet controls MLS access for agents in the greater Chicagoland area and conditions such access on the payment of membership dues. Mainstreet does so as a chartered local board operating under policies and governance frameworks promulgated nationally, but the unlawful coercion alleged here arises directly from Mainstreet's implementation of those rules in Illinois in collaboration with Baird & Warner, Inc.

## IV.    FACTUAL ALLEGATIONS

### A.    Market Definition and Market Power:

13.    The relevant product market is residential real estate brokerage services that require access to the Multiple Listing Service ("MLS"). In modern practice, an agent who lacks MLS access cannot effectively compete: the MLS is the industry's comprehensive clearinghouse for listings, showing instructions, cooperation terms, historical pricing, and offer data. It is also the backbone for downstream distribution (broker IDX feeds, vendor tools, portals), making it indispensable for brokerage competition.

14.    There are no reasonable substitutes for MLS access in this market. Public portals display only partial data, lag in timeliness, and lack essential cooperative compensation information. Private pocket-listing groups and FSBO channels are fragmented and cannot replicate the MLS's two-sided network effects.

15.    The relevant geographic market is the greater Chicagoland metropolitan area—Cook, DuPage, Lake, and Will Counties—because MLS systems are organized locally, consumers overwhelmingly hire local agents, and cross-elasticity of demand across MLS boundaries is minimal.

16.    MLS-based brokerage is two-sided: more listings attract more buyers and agents, which attracts more listings. This feedback loop makes replication infeasible and exclusion from the MLS equivalent to exclusion from the market.

17.     Mainstreet controls access to the MLS for thousands of agents in this market. It conditions MLS access on payment of association dues and compliance with rules not required by state licensure.

18.     Baird & Warner and other brokerages enforce these rules by requiring new licensees to purchase Mainstreet membership during onboarding.

19.     The combination of MLS indispensability, local organization, and mandatory membership rules confers market power on Defendants and raises barriers to entry.

**B.      Essential Facility and Foreclosure:**

20.     The MLS functions as an essential facility: it is controlled by Defendants; competitors cannot duplicate it; access is essential for effective competition; and access is only offered on discriminatory terms—association membership and dues not required by Illinois law.

21.     A less restrictive alternative exists: MLS data could be administered on non-discriminatory terms to all licensed Illinois agents, with the State of Illinois as a feasible steward.

**C.      Anticompetitive Effects and Consumer Harm:**

22.     Defendants' conduct raises barriers to entry by forcing up-front dues.

23.     Reduced entry suppresses competition, innovation, and maintains supracompetitive commission rates.

24.     Defendants foreclose alternative MLS systems or public repositories of property data.

25.     Consumers are harmed through higher costs and reduced choice.

**D.     Hub-and-Spoke Conspiracy:**

26.     REALTOR® rules provide the framework, but the restraint here is implemented and enforced in Illinois by Mainstreet and Baird & Warner.

27.     Mainstreet acts as gatekeeper by conditioning MLS access on payment of dues.

28.     Baird & Warner acts as enforcer, requiring new agents to join Mainstreet.

29.     The alignment produces horizontal restraint among brokerages.

30.     This is not mere parallel conduct but an interlocking framework evidencing conspiracy.

**E.     Plaintiff's injury, Causation, and Plus Factors:**

31.     In 2025, Plaintiff was told by Baird & Warner managing broker and his assistant he could not practice without paying $1,000 to Mainstreet.

32.     The assistant, in the presence of the managing broker, said Baird & Warner "also receives its portion," once I paid the $1,000 to Mainstreet; Suggesting revenue sharing.

33.     On information and belief, Baird & Warner applies this requirement uniformly across agents.

34.     On information and belief, financial arrangements exist to share revenues with brokerages.

35.     Plaintiff paid under duress.

36.     After payment, Baird & Warner opened accounts, including MLS access.

37.     After written objection, Baird & Warner's Senior VP confirmed Mainstreet would refund dues and named the staff member processing it, evidencing coordination.

38.     Plaintiff's injury is tied to broader market harm: exclusionary barriers and consumer harm.

39.     Plus factors: common motive to conspire; action against self-interest; leadership coordination; uniform rules; retaliatory leverage through MLS exclusion.

40.     Plaintiff's injury flows directly from Defendants' conspiracy and is the type antitrust law prohibits.

41.     Plaintiff has standing under Section 4 of the Clayton Act because he paid supracompetitive fees directly resulting from Defendants' conspiracy. The injury is of the type antitrust laws were intended to prevent—exclusionary barriers and coerced payments by market participants.

## V.     EVIDENTIARY EXAMPLES

42.     Examples of coercion include (a) explicit statements by Baird &Warner's onboarding staff and managing broker that MLS access required payment to Mainstreet, and (b) acknowledgment by Baird & Warner's Senior VP of sales that Mainstreet would process refunds on Baird & Warner's instruction, and (c) acknowledgment by Mainstreet Chief Operating Officer of coordination with Baird & Warner and confirming processing on their side.  These show direct coordination and shared economic motive.

## VI.     CAUSES OF ACTION

### A.  Count I – Violation of Sherman Act §1 (15 U.S.C. §1)

43.     Plaintiff realleges and incorporates all preceding paragraphs. Defendants engaged in a hub-and-spoke conspiracy that unreasonably restrains competition in violation of Section 1 of the Sherman Act.

### B.  Count II – Violation of Clayton Act §3 (15 U.S.C. §14)

44.     Plaintiff realleges and incorporates all preceding paragraphs. Defendants imposed an unlawful tying arrangement, conditioning MLS access on compelled purchase of Mainstreet

membership, in violation of Section 3 of the Clayton Act.

### C.  Count III – Violation of Illinois Antitrust Act (740 ILCS 10/1 et seq.)

45.     Plaintiff realleges and incorporates all preceding paragraphs. Defendants' conduct constitutes an unlawful conspiracy in restraint of trade under Illinois law. Plaintiff is entitled to treble damages, and injunctive relief.

### D.  Count IV – Unjust Enrichment (Illinois Common Law)

46.     Plaintiff realleges and incorporates all preceding paragraphs. Defendants unjustly obtained monetary benefits from Plaintiff through coerced dues. Equity requires restitution and disgorgement.

### E.  Count V – Declaratory Judgment (28 U.S.C. §2201)

47.     Plaintiff realleges and incorporates all preceding paragraphs. An actual controversy exists. Plaintiff seeks a declaration that conditioning MLS access on association membership constitutes unlawful restraint and tying, and that Defendants must provide MLS access on non-discriminatory terms to all licensed Illinois agents.

The public interest favors enforcement of competition in real-estate markets, which directly affects housing affordability and consumer choice. Judicial intervention is necessary to restore open access to essential facilities used by thousands of Illinois consumers and licensees.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

a.  Declare Defendants' conduct unlawful under federal and Illinois law;

b.  Award treble damages, restitution, disgorgement, and interest;

c.  Enjoin Defendants from conditioning MLS access on membership;

d.  Declare MLS an essential facility and require nondiscriminatory access;

e.  Order separation of MLS access from membership;

f.  Order Defendants to develop a plan, subject to Court approval, for non-discriminatory MLS access, including potential transition to state stewardship.;

g.  Appoint a compliance monitor;

h.  Award costs and fees; and

i.  Plaintiff reserves the right to seek reasonable litigation costs and, if represented later, statutory attorney fees under 15 U.S.C. § 15

j.  Grant other relief the Court deems proper.


## VIII.   DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated:
November 14, 2025

JUSTIN MAHWIKIZI
18430 Francisco Avenue
Homewood IL 60430
Telephone: 267-252-3305
Justin.mahwikizi@gmail.com

# EXHIBIT A

Jun 17            POS PURCHASE                                         -$1,026.26
                  RECORD NO. 054235   CARD NO. 5838
                  REALTOR ASSOCIATION ML    CHICAGO        IL

# EXHIBIT B

Justin Mahwikizi
18430 Francisco Avenue
Homewood IL, 60430
Justin.mahwikizi@gmail.com
(267) 252-3305

Date: August 19th, 2025

**BY MAIL (Signature requested)**
To: Baird & Warner Holding Company (Attention: Compliance/Legal Department)
CC: Baird & Warner Orland Park, Illinois

MARGARET CABELLO
120 S LASALLE ST, SUITE 2000
CHICAGO IL, 60603

**Re: Request for policy clarification, training, and resolution of concerns.**

Dear Compliance team,

I am writing in my capacity as a newly licensed real estate agent affiliated with Baird & Warner. Out of respect for the company's longstanding reputation for professionalism, I believe it is important to share concerns I recently witnessed and request clarification and corrective action where appropriate.

**1. Tenant Screening and Fair Housing Practices.**

At a recent managing broker team meeting in Orland Park, Illinois' office, discussions included strategies for rejecting rental applicants that, if implemented, could be interpreted as a methods for circumventing fair housing protections. Specifically, I understood the conversation to suggest avoiding use of credit scores as an explicit reason for denials, while still denying applicants on that basis.

While I recognize that credit history is currently a permissible screening tool, both under Federal and State fair housing laws – Including the Fair Housing Act, and the Illinois Human Rights Act – Prohibit practices that result in disparate treatment or disparate impact against protected classes. Further, with pending legislation such as Illinois Senate Bill 1728, I am concerned that any practice designed to "work around" tenant protections may expose the company, managing brokers, and affiliated agents to compliance risk.

Out of an abundance of caution, I respectfully request that Baird & Warner provide updated company guidance and training for managing brokers and property management executives to ensure uniform, lawful, and ethical practices moving forward.

1

**1. REALTOR® Board Membership Fee.**

At the outset of my affiliation, I was directed to pay approximately $1,000 for membership in the Mainstreet Organization of REALTORS®, with the explanation that I could not conduct real estate activities without such membership. My understanding since has been that membership in a REALTOR® association, while often beneficial, is not a legal requirement for licensed practice in Illinois. The pressure put on me by the Managing Broker, and one of the Official manager handling onboarding was clear, and coercive.

I therefore request reimbursement of this fee or other appropriate adjustment, as I believe my payment was made under misapprehension, duress, and coercion.

**3. Request for Transfer to a New Managing Brokerage.**

Based on what I witnessed in the recent meeting, I have concluded that the issues reflect broader cultural practices within the company's leadership. John Matthews, Senior Vice President of Residential Sales at Baird & Warner was in attendance of this team meeting. In fact; He was seated right next to me. For this reason, I do not wish to transfer internally.

Instead, I request that Baird & Warner facilitate my smooth and timely transition to a new sponsoring/managing brokerage of my choice. This process typically requires cooperation by the current managing broker in order to complete the IDFPR transfer paperwork. I ask that Baird & Warner ensure this transition is not made unnecessarily difficult or delayed.

**4. Resolution Path.**

I am confident that Baird & Warner, given its reputation, will wish to address these matters internally in a way that prevents any future exposure for the company or its affiliates before outside agencies such as HUD, the Illinois Department of Human Rights, or IFPR become involved.

I am seeking an amicable resolution and trust that the company will view this letter as an opportunity to strengthen compliance, training, and agent support. I hope to hear from you within the next 15 days.

Thank you for your attention. I look forward to your timely response.

Respectfully,
Justin Mahwikizi
18430 Francisco Avenue
Homewood IL, 60430
Justin.mahwikizi@gmail.com
(267) 252-3305

# EXHIBIT C

 Gmail

**Justin Mahwikizi <justin.mahwikizi@gmail.com>**

## Follow Up to Your Letter

**David Bailey** <david.bailey@bairdwarner.com>                    Mon, Sep 8, 2025 at 12:03 PM
To: Justin Mahwikizi <justin.mahwikizi@gmail.com>

Hi Justin,

Kim McCoy from Main Street is processing the refund and you can reach out to her for clarification on timing.

Thanks,
David



**David Bailey**
SVP & GENERAL SALES MANAGER

**M:**773-454-2943
david.bailey@bairdwarner.com
425 N. Martingale Rd, Suite 1710
Schaumburg, IL 60173

On Fri, Sep 5, 2025 at 3:20 PM Justin Mahwikizi <justin.mahwikizi@gmail.com> wrote:
> Dear David -
>
> Thank you very much for the note in writing.
>
> Can you confirm the contact/authority at Mainstreet who agreed to refund or someone I can coordinate with
> regarding the timing of the refund?
>
> Thank you for the coordination orchestrated by Baird & Warner.
>
> Best regards,
>
> Justin Mahwikizi
> Justin.mahwikizi@gmail.com
> 267-252-3305
>
>
> On Fri, Sep 5, 2025 at 10:15 AM David Bailey <david.bailey@bairdwarner.com> wrote:
>> Justin,
>>
>> We are in receipt of your letter dated August 19th and understand your desire to work for a different sponsoring
>> broker.
>>
>> The Main Street Association of Realtors has agreed to refund your membership dues and we will terminate your
>> license sponsorship with Baird & Warner effective today. You are free to pursue a new sponsoring broker of your
>> choice.
>>
>> We wish you the best in your real estate career moving forward.

Thanks,
David



**David Bailey**
SVP & GENERAL SALES MANAGER

**M:** 773-454-2943
david.bailey@bairdwarner.com
425 N. Martingale Rd, Suite 1710
Schaumburg, IL 60173

# EXHIBIT D

 Gmail

Justin Mahwikizi <justin.mahwikizi@gmail.com>

---

# Membership Dues Refund – Coordination

**Kim McCoy** <kim@mainstreetrealtors.com>                                    Tue, Sep 9, 2025 at 1:48 PM
To: Justin Mahwikizi <justin.mahwikizi@gmail.com>
Cc: David Bailey <david.bailey@bairdwarner.com>

Hi Justin – Your refund was submitted on Friday, September 5 to our internal accounting department. They will cut the check in the next 7 business days and will mail it out. We will send the check to the address we had on file in Homewood, IL.

Any other questions or concerns please let me know. Thank you.

## Kim McCoy, RCE, AHWD, CIPS, e-Pro

*Chief Operating Officer*
*6655 Main Street, Downers Grove, IL 60516*

630.324.8462 - Direct

   

I invest in promoting and protecting the Real Estate Industry!

  

---

**From:** Justin Mahwikizi <justin.mahwikizi@gmail.com>
**Date:** Monday, September 8, 2025 at 5:38 PM
**To:** Kim McCoy <kim@mainstreetrealtors.com>

**Cc:** David Bailey <david.bailey@bairdwarner.com>
**Subject:** Membership Dues Refund – Coordination

Ms. McCoy,

Thank you both for your assistance regarding the refund of my $1,000 membership dues. To ensure I have the details correct on my end, could you please confirm:

1. The date the refund was authorized,
2. The expected timeline for issuance, and
3. The method by which it will be provided (check, ACH, or other).

I appreciate your coordination in helping bring clarity to the process and look forward to your confirmation.

Best regards,

Justin Mahwikizi

Justin.mahwikizi@gmail.com

267-252-3305

---------- Forwarded message ---------
From: **David Bailey** <david.bailey@bairdwarner.com>
Date: Mon, Sep 8, 2025 at 12:04 PM
Subject: Re: Follow Up to Your Letter
To: Justin Mahwikizi <justin.mahwikizi@gmail.com>

Hi Justin,

Kim McCoy from Main Street is processing the refund and you can reach out to her for clarification on timing.

Thanks,

David

Image removed by sender.

On Fri, Sep 5, 2025 at 3:20 PM Justin Mahwikizi <justin.mahwikizi@gmail.com> wrote:

Dear David -

Thank you very much for the note in writing.

Can you confirm the contact/authority at Mainstreet who agreed to refund or someone I can coordinate with regarding the timing of the refund?

Thank you for the coordination orchestrated by Baird & Warner.

Best regards,

Justin Mahwikizi

Justin.mahwikizi@gmail.com

267-252-3305

On Fri, Sep 5, 2025 at 10:15 AM David Bailey <david.bailey@bairdwarner.com> wrote:

Justin,

We are in receipt of your letter dated August 19th and understand your desire to work for a different sponsoring broker.

The Main Street Association of Realtors has agreed to refund your membership dues and we will terminate your license sponsorship with Baird & Warner effective today. You are free to pursue a new sponsoring broker of your

choice.

We wish you the best in your real estate career moving forward.

Thanks,

David

Image removed by sender.

# EXHIBIT E



**MAINSTREET ORGANIZATION OF REALTORS**
6655 MAIN STREET
DOWNERS GROVE, ILLINOIS 60516
PH. 630-324-8400

REALTOR®

THIS DOCUMENT IS PROTECTED IN INVISIBLE BLUE AND DUPLICATE BACKGROUND THAT CANNOT BE COPIED - THIS BORDER IS VOID - TO VERIFY AUTHENTICITY

BMO Harris Bank, N.A.
CHICAGO, IL

21
710

**CHECK DATE** 9/12/2025

**CONTROL NUMBER** 00070681

**AMOUNT** **********1,026.26*

**70681**

PAY *ONE THOUSAND TWENTY-SIX AND 26 / 100

TO THE
ORDER
OF

Justin Mahwikizi
18430 Francisco Avenue
Homewood, IL 60430

*Margaret A. Jacks*
AUTHORIZED SIGNATURE

⑈0?0⑈8⑈⑈ ⑈:0?⑈02566⑈: ⑈8004303⑈3⑈

ADDITIONAL SECURITY FEATURES [⮕] DETAILS ON BACK

**MAINSTREET ORGANIZATION OF REALTORS**

**70681**

| Date | Invoice Number | Comment | Amount | Discount Amount | Net Amount |
|------|----------------|---------|--------|-----------------|------------|
| 9/8/2025 | CR090525A | Membership Refund | 1,026.26 | 0.00 | 1,026.26 |

| Check: 0000070681 | 9/12/2025 | Justin Mahwikizi | | | 1,026.26 |

 Gmail

**Justin Mahwikizi <justin.mahwikizi@gmail.com>**

## We received your check

**Capital One** <capitalone@notification.capitalone.com>
To: justin.mahwikizi@gmail.com

Mon, Sep 15, 2025 at 9:20 PM

 Sign in

 CapitalOne

     Justin
                        360 Checking…9579

# We received your check

**Justin,**

You've successfully submitted your check for deposit. Because you submitted it after 9 p.m. ET, we'll process it the next business day. We'll let you know when it's been processed. **Until then, don't destroy your check.**

Amount: **$1026.26**
To: **360 Checking…9579**
Memo: **Main Street membership refund**
Submitted on: **September 15, 2025**

Generally, deposits are available the next business day. We do have to hold some longer. Access to funds may be denied if your account is in a restricted status. Please call customer service if you have any questions regarding your account.

[Sign in to your account](Sign in to your account) to view your balance.

 Download the Capital One Mobile app.

    

**About this message**

The site may be unavailable during normal maintenance or due to unforeseen circumstances.

**Important information from Capital One**

Contact us  |  Privacy  |  Help prevent fraud

To ensure delivery, add capitalone@notification.capitalone.com to your address book.

This email was sent to justin.mahwikizi@gmail.com and contains information directly related to your account with us, other services to which you have subscribed, and/or any application you may have submitted.

Capital One does not provide, endorse or guarantee any third-party product, service, information or recommendation listed above. The third parties listed are not affiliated with Capital One and are solely responsible for their products and services. All trademarks are the property of their respective owners.

Please do not reply to this message, as this email inbox is not monitored. To contact us, visit www.capitalone.com/help-center/contact-us.

MEMBER
**FDIC**

Products and services are offered by Capital One, N.A., Member FDIC.

© 2025 Capital One. Capital One is a federally registered service mark.

RCCHK3 45487 1701150

# EXHIBIT F

**STATE OF ILLINOIS, COUNTY OF [COOK]**

**<u>DECLARATION OF JUSTIN MAHWIKIZI</u>**

*<u>Pursuant to 28 U.S.C. § 1746</u>*

I, JUSTIN MAHWIKIZI, being duly sworn, depose and state as follows:

1.  I am over 18 years of age, competent to testify, and make this affidavit based on my personal knowledge.

2.  On June 09th, 2025, during onboarding with Baird & Warner, Inc., I was instructed that I was required to pay membership dues to the Mainstreet Organization of REALTORS® ("Mainstreet") in the amount of $1,026.26 in order to practice as a real estate agent.

3.  On June 17th, 2-025, I made payment of $1,026.26 to Mainstreet under this instruction.

4.  On August 19th, 2025, I issued a written letter complaint to Baird & Warner leadership regarding this coerced payment.

5.  On September 05th, 2025, I received written correspondence from David Bailey, Senior Vice President and General Sales Manager at Baird & Warner, confirming that Mainstreet would issue a refund of my dues.

6.  On September 9, 2025, I received written correspondence from Kim McCoy, Chief Operating Officer of Mainstreet, confirming that my refund had been submitted to Mainstreet's accounting department on September 5, 2025, and that a refund check would be mailed to me within 7 business days.

7.  On September 15, 2025, I received the refund Check from Mainstreet in the amount of $1,026.26.

8. The refund check was not accompanied by any release of claims, waiver, or nondisclosure agreement, and was presented solely as repayment of the original dues.

9. I have retained copies of the refund check, the envelope in which it was delivered and the deposit record for purposes of evidence.

10. This sequence of communications demonstrates coordination between Baird & Warner and Mainstreet in connection with the collection and refund of the $1,026.26 payment.

11. I submit this affidavit to document the coercion, payment, complaint, and subsequent refund coordination between Baird & Warner and Mainstreet.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed this 14 day of November, 2025, in Homewood, Illinois.**

**Justin Mahwikizi**

# EXHIBIT G

 **Gmail**

Justin Mahwikizi <justin.mahwikizi@gmail.com>

---

## License Relationship Approved

---

**IL Department of Financial/Professional Regulation** <DFPRNotification@illinois.gov>          Tue, Jun 10, 2025 at 1:15 AM
Reply-To: IL Department of Financial/Professional Regulation <donotreply@illinois.gov>
To: Justin Mahwikizi <justin.mahwikizi@gmail.com>

Dear Mahwikizi, Justin,

Our records indicate that BAIRD & WARNER RESIDENTIAL SALES INC has recently approved your request to be added as its sponsored licensee.

Thank you,

Division of Real Estate

Illinois Department of Financial and Professional Regulation

state

Illinois Department of Financial and Professional Regulation



Justin Mahwikizi <justin.mahwikizi@gmail.com>

---

## IDFPR Electronic License Retrieval Notification

---

**IDFPR Notification** <FPR.notice@illinois.gov>                    Thu, Jun 26, 2025 at 2:02 AM
To: justin.mahwikizi@gmail.com

Justin,

**Thank you for contacting the Department regarding your Licensed Real Estate Broker license.**

This email is to confirm that you have recently applied for, renewed, or updated the address information associated with your license.

If you recently RENEWED your license please read the instructions below to view or print your license.

**NOTE**: Renewal fee processing time is generally 2 business days. If your expiration date has not updated, please check back in a few days.
The Department is *no longer mailing* paper licenses.

To view your license, use your criteria below and click the link below to begin!

License Number: **475.215895**
Access ID: **4932773**

https://idfpr.illinois.gov/fpr-applications/getmylicense/select.html

If you recently renewed your license with the Division of Professional Regulation or the Division of Real Estate, we invite you to complete the following survey https://forms.office.com/g/sK480D2wyZ